IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON CHARLES SNOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-5 Erie |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Sean McLaughlin |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Susan Baxter |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Plaintiff's motion for summary judgment (*ECF No. 9*) be denied, that the Defendant's motion for summary judgment (*ECF No. 12*) be granted, and that the final decision of the Commissioner of Social Security be affirmed.

**I.     REPORT**

    **A.     INTRODUCTION**

Plaintiff Jason Charles Snow ("Snow") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 9, 12).

1

## B. HISTORY

Snow worked as a laborer from 1997 through January 2008, including 3 consecutive years at K-Mart between 2003 and 2005. (R.44-5, 248, 285). He worked full-time from at least October 2007 through January 28, 2008. (R.167, 178). On January 28, 2008, Plaintiff was laid off from his job as a laborer due to lack of work. (R. 50, 177). Plaintiff then applied for and received unemployment benefits (certifying to the Commonwealth of Pennsylvania that he was able and available to work). (R. 50-51).

While collecting unemployment benefits, Snow protectively applied for DIB and SSI benefits on June 16, 2008, alleging that he had become "disabled" on June 20, 1998.[1] (R. at 26, 42, 137-46, 152, 164). Despite working between 1997 and 2008, Plaintiff asserted that his depression (and the onset date of his alleged disability that prevented him from working) began January 20, 1998. (R. 137, 140, 160, 177). The Pennsylvania Bureau of Disability Determination denied the applications on August 28, 2008. (R. at 70, 76, 81, 87). Snow responded on September 19, 2008, by filing a timely request for an administrative hearing. (R. at 94-95). On November 25, 2009, a hearing was held before Administrative Law Judge ("ALJ") Paula Fow. (R. at 40). Snow, who was represented by counsel, appeared and testified in Erie, Pennsylvania. (R. at 43-60). George A. Starosta ("Starosta"), an impartial vocational expert, also testified at the hearing. (R. at 60-63). The ALJ presided over the hearing from Seven Fields, Pennsylvania, by means of an electronic teleconferencing apparatus. (R. at 26, 42). In a decision dated February 2, 2010, the ALJ determined that Snow was not "disabled" within the meaning of the Act. (R. at 23-36).

---

[1] In his application for benefits, Snow alleged that he was "disabled" due to bipolar disorder, anxiety, depression, attention deficit disorder and learning problems. (R. at 177).

On April 5, 2010, Snow sought administrative review of the ALJ's decision by filing a timely request for review with the Appeals Council. (R. at 15). The Appeals Council denied the request for review on November 10, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Snow commenced this action on January 11, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1, 2). Snow and the Commissioner filed motions for summary judgment. (ECF. Nos. 9, 12). Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

C.  **"New Evidence"**

The instant case is unusual in that a large portion of the administrative record cannot be considered for the purpose of determining whether Snow was "disabled" during the relevant period of time because they were not before the ALJ when she made her decision. (R. at 282-722); *Chandler v. Commissioner*, 667 F.3d 356, 360 (3d Cir. 2011); *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001).[2]

Throughout his brief, Snow attacks both the ALJ's decision denying his application for benefits and the Appeals Council's decision denying his request for review. (ECF No. 11 at 1-21). Despite Snow's efforts to impugn the action taken by the Appeals Council, this Court has jurisdiction to review only the Commissioner's "final decision." *Califano v. Sanders*, 430 U.S. 99, 107-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Since the Appeals Council denied Snow's

---

[2] The record indicates that Snow remained insured for benefits under Title II through June 30, 2010. (R. at 28, 161). Although his initial application for benefits was denied, Snow remains free to file new applications for benefits if he believes that he was disabled on or after February 3, 2010. When the Appeals Council denied Snow's request for review, the ALJ's decision became the "final decision" of the Commissioner. *Sims v. Apfel*, 530 U.S. 130, 106-107 (2000). Consequently, the Commissioner's decision does not preclude Snow from pursuing new claims covering the period of time postdating February 2, 2010.

request for review, the Commissioner's "final decision" was the decision rendered by the ALJ on February 2, 2010. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The Court does not have jurisdiction to review the Appeals Council's decision denying Snow's request for review. *Matthews*, 239 F.3d at 594; *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992).

The Commissioner's regulations allow a claimant to submit "new and material evidence" to the Appeals Council in support of his or her request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). Snow submitted 441 pages of medical records to the Appeals Council. (R. at 4-5, 282-722). Those records were never presented to the ALJ.[3] Indeed, some of those records postdated the ALJ's decision. In this case, the Court can consider only the evidence that was before the ALJ in determining whether her decision is supported by substantial evidence. *Chandler*, 667 F.3d at 360; *Matthews*, 239 F.3d at 592-595.[4]

---

[3] Exhibits 1A through 7F were admitted at the hearing. (R. at 43). Exhibits 8F, 9F and 10F were not submitted until more than a year after the filing of Snow's request for review. (R. at 4-5, 15).

[4] Although Plaintiff has not specifically sought a remand under the sixth sentence of § 405(g), a district court may consider evidence presented to the Appeals Council for that purpose. *Matthews*, 239 F.3d at 593. Sentence Six provides a reviewing court with the authority to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). Evidence is not "new" if it is "merely cumulative of what is already in the record." *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). "[T]he materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination." *Id.* "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* A claimant seeking to overcome the "good cause" hurdle must, at a minimum, articulate his or her reasons for not obtaining the evidence at a time when it could have been considered by an administrative law judge. *Chandler*, 667 F.3d at 360.

The 441 pages of documentary evidence were submitted to the Appeals Council in June 2011. (R. at 4-5, 202-203, 282, 326). Sixteen months elapsed between the issuance of the ALJ's decision and the submission of the additional evidence. Snow makes no attempt to demonstrate that he had "good cause" for failing to obtain the relevant information when his applications for benefits were still before the ALJ. (ECF No. 11). For that reason, he cannot establish his entitlement to a sentence-six remand. *Chandler*, 667 F.3d at 360.

Moreover, the evidence submitted to the Appeals Council does not appear to satisfy § 405(g)'s "materiality" requirement as it does not include an assessment of Snow's work-related abilities and limitations and much of it postdates the ALJ's decision. (R. at 282-722). Because this evidence does not "relate to the time period for which benefits were denied," it is not "material" to this case. *Szubak*, 745 F.2d at 833. Accordingly, only the evidence that was presented to the ALJ may be considered by the Court. *Matthews*, 239 F.3d at 592-595.

### D. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be

unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the

6

claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### D. THE ALJ'S DECISION

Snow was born on March 1, 1980, making him twenty-seven years old on his amended onset date and twenty-nine years old on the date of the ALJ's decision. (R. at 35, 137, 140).[5] He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had a "limited education"[6] and an ability to communicate in English. (R. at 35, 44, 181); 20 C.F.R. §§ 404.1564(b)(3), (5), 416.964(b)(3), (5).

The record indicates that Snow engaged in substantial gainful activity subsequent to his alleged onset date of June 20, 1998. (R. at 28-29, 178). He stopped working on January 28, 2008, after being laid off. (R. at 50, 177). However, instead of denying Snow's claims at the first step of the sequential evaluation process, the ALJ gave Plaintiff the benefit of the doubt and treated January 28, 2008 as his alleged onset date. (R. at 28-29, 32).

The ALJ found that Snow suffered from a major depressive disorder and a learning impairment. (R. at 29). His major depressive disorder was deemed to be "severe" under the Commissioner's regulations, while his learning impairment was deemed to be "non-severe." (R. at 29); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Although Snow claimed he was disabled due to bipolar disorder, anxiety, depression, attention deficit disorder, and learning problems (R. at 177), the ALJ only addressed the depression and learning impairment. The ALJ concluded that Snow's two impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 30-31).

---

[5] The ALJ also noted that Snow filed an earlier application for benefits on September 5, 1991 (when he was about eleven years old), the denial of which was not appealed. (R. at 26).
[6] Snow testified that he had dropped out of school before completing the eleventh grade. (R. at 44).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Snow's "residual functional capacity"[7] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple work related decisions and relatively few work place changes.

(R. at 31). Snow had "past relevant work"[8] experience as a laborer. (R. at 35, 61). Vocational Expert Starosta classified all of Snow's prior positions as "unskilled"[9] jobs at the "medium"[10] level of exertion. (R. at 61). In response to a hypothetical question describing an individual with the limitations reflected in the ALJ's residual functional capacity assessment, Vocational Expert Starosta testified that such an individual could work as a laborer. (R. at 62). Therefore, it was determined that Snow could return to his past relevant work. (R. at 35). Given the applicable residual functional capacity and vocational assessments, the ALJ alternatively concluded that Snow could work as an industrial cleaner or kitchen helper.[11] (R. at 36). Starosta's testimony

---

[7] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[8] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[10] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[11] The ALJ also made reference to "auto detailer" positions that had not been mentioned by Starosta. (R. at 36, 62). It is not clear how this error occurred. Since other positions were identified, however, the ALJ's mistake was inconsequential.

established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[12] (R. at 62).

E.   DISCUSSION

The administrative record before this Court reflects that Snow had an IEP[13] when he was in school. (R. at 209-224). He dropped out of school before completing the eleventh grade. (R. at 44). After quitting school, Snow started to work as a general laborer. (R. at 178).

The record also reflects that Snow received unemployment benefits during the relevant time period. At the hearing before the ALJ, Snow testified that he was receiving unemployment compensation benefits.[14] (R. at 51). He responded in the affirmative when asked whether he was looking for a job. (R. at 50). Snow explained that he needed to "search for work" in order to remain eligible for unemployment compensation benefits. (R. at 50). The ALJ referred to Snow's receipt of unemployment compensation benefits in determining that he was not disabled. (R. at 34).

During the relevant period of time, Snow received treatment for depression at Stairways Behavioral Health ("Stairways") in Erie, Pennsylvania. (R. at 246-281). He was evaluated by Dr. Robin Bailey on June 9, 2008. (R. at 246-249). Dr. Bailey reported that Snow had been

---

[12] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[13] The Individuals with Disabilities Education Act ("IDEA") [20 U.S.C. § 1400 *et seq.*] conditions a State's receipt of federal financial assistance on its compliance with certain statutory mandates. 20 U.S.C. § 1412(a). Among those conditions is a requirement that every "child with a disability" be provided with an "individualized education program" ("IEP"). 20 U.S.C. § 1412(a)(4). An IEP must include information pertaining to a disabled child's ability to reach academic goals by adhering to an educational regimen tailored to his or her specific needs. 20 U.S.C. § 1414(d).

[14] In order to be eligible for unemployment compensation benefits under Pennsylvania law, an unemployed individual must be "able to work and available for suitable work." 43 PA. STAT. § 801(d)(1).

admitted to a crisis residential unit on June 3, 2008, in order to move out of his parents' residence due to physical altercations with his brother who had been recently released from prison. (R. at 246). He was given prescriptions for Lamictal, Trazedone, Vistaril and Wellbutrin. (R. at 52, 180). Dr. Bailey attributed some of Snow's depressive symptoms to injuries caused by a 2003 motor vehicle accident. (R. at 246-249). Snow had apparently suffered a broken arm and was hit in the head with a carjack and suffered a temporary loss of vision, but did not report this to the emergency room physician because the driver had no insurance and the vehicle was not registered. (R. at 248). At the hearing before the ALJ, Snow described the accident as a traumatic experience in which he had seen his friends fly through the windshield of the vehicle. (R. at 51).

On June 27, 2008, Dr. Max Gottesman, a treating psychiatrist, indicated that Snow was temporarily "disabled." (R. at 280). Dr. Gottesman reported that Snow's "disability" had begun on June 13, 2008, and that it was expected to last until June 1, 2009. (R. at 280).

On August 18, 2008, Dr. Douglas Schiller, a non-examining psychological consultant, opined that Snow was "able to carry out very short and simple instructions," and that his "understanding and memory" were unrestricted. (R. at 227). Dr. Schiller stated that Snow's mental impairments would not prevent him from meeting the mental demands of competitive work. (R. at 227).

On September 10, 2008, a treating source[15] at Stairways detailed Snow's mental limitations in a "medical source statement." (R. at 254-257). The source reported that Snow had "moderate" limitations in his abilities to understand, remember and carry out detailed instructions. (R. at 256). Only "slight" limitations were found in Snow's abilities to understand,

---

[15] The name of the treating source is illegible. (R. at 257). Snow testified that he had seen several different psychiatrists at Stairways. (R. at 51-52).

11

remember and carry out short, simple instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. (R. at 256). No other "capabilities" were deemed to be affected by Snow's impairments. (R. at 257).

The ALJ accorded "great weight" to the assessments provided by Dr. Schiller and the treating source at Stairways, while affording "little weight" to Dr. Gottesman's opinion declaring Snow as temporarily "disabled." (R. at 34). The ALJ's decision denying Snow's applications for benefits was grounded in alternative findings at the fourth and fifth steps of the sequential evaluation process. (R. at 35-36). Snow contends that the ALJ should have found him to be *per se* disabled at the third step of the process, thereby avoiding the need for determinations at the fourth and fifth steps. (ECF No. 10 at 3, 12, 17-20).

In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The Listing of Impairments describes impairments which render a claimant *per se* disabled. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). The Listing of Impairments is a regulatory device used to streamline the decision-making process by identifying those impairments that would prevent an adult, regardless of his age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. *See* 20 C.F.R. § 404.1525(a), 416.925(a) (stating that the purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"); *Zebley,* 493 U.S. at 532.

The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. *Id.*

An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of production and proof that he meets a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Snow maintains that the ALJ should have found him to be *per se* disabled under Listing 12.04, Affective Disorders. (ECF No. 10 at 17-20). To be presumed disabled under Listing 12.04, a claimant must demonstrate that his mental impairments satisfy both the "A" and the "B" criteria of that Listing, or that the requirements of the "C" criteria (not an issue in this case) are fulfilled. 20 C.F.R. pt. 404, subpt, P, app. 1, § 12.04.

To satisfy the "A" criteria of Listing 12.04, the claimant must prove he has medically documented persistence of one of three listed disorders including depressive syndrome. In order to satisfy the "B" criteria of Listing 12.04, a claimant must show that his mental impairments resulted in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.

Here, the ALJ concluded that Snow had a "mild" restriction of his activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" difficulties in

13

maintaining concentration, persistence or pace,[16] but had not experienced any extended episodes of decompensation. (R. at 31).

Snow asserts that he would have been found to be *per se* disabled under Listing 12.04 if the opinions of Dr. Bailey and Dr. Gottesman had been accorded "controlling weight." (ECF No. 10 at 18). That argument is unavailing. As an initial matter, the question of whether a claimant's impairments meet or equal a Listing is reserved for the Commissioner's determination. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A medical opinion relating to such an issue is *never* entitled to "controlling weight." *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004). Furthermore, neither Dr. Bailey nor Dr. Gottesman specifically opined that Snow's impairments were *per se* disabling under the "B" criteria, whereas Dr. Schiller, the consultative doctor, specifically reported that Snow's impairments **did not** satisfy the diagnostic criteria of Listing 12.04. (R. at 231). It was permissible for the ALJ to rely on Dr. Schiller's consultative assessment. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The record provides no support whatsoever for Snow's allegation of *per se* disability.

Based on her evaluation on June 9, 2008, Dr. Bailey gave Snow a rating of fifty on the "Global Assessment of Functioning" ("GAF") Scale.[17] (R. at 249). Snow appears to rely on that rating as a basis for asserting that Dr. Bailey found him to be disabled. (ECF No. 10 at 11). The problem with that line of reasoning is that no direct correlation exists between a claimant's GAF scores and his or her ability to engage in work-related activities. *Chanbunmy v. Astrue*, 560

---

[16] In a treatment note dated September 28, 2009, a Stairways employee stated that one of Snow's goals was to be able to "concentrate" for three days each week. (R. at 279). Snow maintains that the treatment note implies that he was unable to concentrate for the remaining four days of a given week. (ECF No. 10 at 14). Snow's reading of the statement, however, is inconsistent with notations surrounding that statement. The same treatment note indicated that Snow was "working" and "active in the job process." (R. at 279).

[17] A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

14

F.Supp.2d 371, 383 (E.D.Pa. 2008). The subsequent assessment describing Snow's functional abilities and limitations was far more useful to the adjudicatory process. (R. at 254-257). Because a Stairways psychiatrist indicated that only "slight" and "moderate" limitations could be attributed to Snow's mental impairments, it was reasonable for the ALJ to conclude that Snow was not disabled. (R. at 34, 256).

The ALJ was not required to credit Dr. Gottesman's statement declaring Snow to be temporarily "disabled." (R. at 280). The ultimate determination as to whether a claimant is disabled is reserved to the Commissioner. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). Since medical doctors typically lack the vocational expertise needed to ascertain whether an individual's limitations would preclude the performance of specific jobs, their opinions as to whether a claimant is "disabled" carry little weight. *Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001). While a probative medical opinion describes a claimant's "physical or mental restrictions" (*see* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)), the extent to which those restrictions preclude the performance of substantial gainful activity depends on what employers in the national economy typically expect of their employees.[18] Questions pertaining to employer expectations are more appropriately addressed by a vocational expert. *Boone v. Barnhart*, 353 F.3d 203, 205-209 (3d Cir. 2003).

Even if Dr. Gottesman's opinion had been fully credited by the ALJ, it would not have established Snow's entitlement to disability benefits. In order to establish his or her entitlement to benefits under the Act, a claimant must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have

---

[18] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

15

lasted (or are expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Since the temporary disability referenced by Dr. Gottesman was not expected to last for a full twelve months, Gottesman's statement was facially insufficient to establish the existence of a statutory disability. (R. at 280).

In any event, to the extent that the opinions expressed by Dr. Bailey and Dr. Gottesman could be deemed to support a finding of disability, the ALJ was not required to credit them. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011). Where a conflict in the evidence exists, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Dr. Schiller opined that Snow was capable of working. (R. at 227). A treating source from Stairways reported that Snow's impairments had resulted only in "slight" and "moderate" limitations. (R. at 256). This evidence provided the ALJ with an adequate basis for rejecting the opinions of Dr. Bailey and Dr. Gottesman. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

At the hearing, Snow testified that he had experienced difficulties in dealing with members of the general public. (R. at 56-57). He described panic attacks that he had experienced while walking inside of a grocery store. (R. at 56). Since the record contained evidence of an impairment that could reasonably be expected to cause the symptoms alleged by Snow, his subjective complaints were entitled to "serious consideration." *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Nonetheless, the ALJ was not required to credit Snow's testimony in every respect. *Chandler*, 667 F.3d at 363. A treating source from Stairways reported that Snow had only a "slight" restriction in his ability to interact appropriately with supervisors, co-workers, and members of the general public. (R. at 256). Because Snow's

testimony was contradicted by information provided by a treating source, the ALJ acted within her discretion in declining to limit Snow to jobs involving only minimal public contact. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

As discussed earlier, the Stairways source indicated that Snow was "moderately" limited in his abilities to understand, remember and carry out detailed instructions. (R. at 256). Snow describes those limitations as "significant limitations for a finding of disability." (ECF No. 10 at 11). What he fails to understand is that the ALJ's residual functional capacity assessment fully accounted for the "moderate" limitations identified by the treating source. The ALJ restricted Snow to a range of work requiring the performance of only "simple, routine, repetitive tasks." (R. at 31). That restriction excluded jobs requiring an individual to understand, remember and carry out *detailed* instructions. Starosta testified that an individual with the limitations described by the ALJ could perform the duties of Snow's prior jobs. (R. at 62). That testimony provided the ALJ with an adequate basis for determining that Snow could return to his past relevant work. (R. at 35). Starosta went on to state that the described individual could work as an industrial cleaner or kitchen helper. (R. at 62). Relying on that testimony, the ALJ made the alternative finding that other jobs consistent with Snow's residual functional capacity existed in the national economy. (R. at 35-36). Starosta's testimony was uncontradicted. Therefore, Snow has no evidentiary basis for arguing that the "moderate" limitations identified by his treating source warranted a finding of disability. (ECF No. 10 at 11).

On June 9, 2008, Dr. Bailey listed "homelessness" as a factor contributing to Snow's depressive symptoms. (R. at 249). Dr. Bailey's evaluation occurred less than a week after Snow had moved out of his parents' home and into a crisis residential unit. (R. at 246). In his brief, Snow asserts that he "remains homeless and [is] living on the streets." (ECF No. 10 at 5). To

the extent that he implies that he was homeless for the duration of his alleged period of disability, his assertion is contradicted by the testimonial record. At the hearing, Snow testified that he was living with his girlfriend. (R. at 45). In any event, homelessness is not a ground upon which Snow can establish his entitlement to benefits. His eligibility for benefits turns solely on whether his impairments rendered him incapable of working during the relevant period of time. *Walton*, 535 U.S. at 214-222.

In her decision, the ALJ observed that Snow had stopped working because of a layoff rather than because of his medical condition. (R. at 28, 34). Snow maintains that his work history consists only of part-time positions through temporary employment agencies. (ECF No. 10 at 9-10). Even if that is the case, part-time work can constitute "substantial gainful activity" under the Commissioner's regulations. 20 C.F.R. §§ 404.1572(a), 416.972(a). Snow does not refute the ALJ's conclusion that he had engaged in substantial gainful activity between June 20, 1998, and January 28, 2008. (R. at 28-29; ECF No. 10 at 9-10). The ALJ concluded that Snow could return to his past relevant work not only as it was typically performed by individuals working in the national economy, but also as it had been performed by Snow prior to his layoff. (R. at 35). Those findings were independently sufficient to justify the denial of Snow's claims. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 419-421 (D.Del. 2002). Snow testified that he had been laid off, and that he was still looking for work. (R. at 50-51). The record provides no basis for disturbing the ALJ's findings relating to Snow's work history and the reason for his discharge.

### F.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Snow's motion for summary judgment (*ECF No. 9*) be denied, and that the Commissioner's motion for summary

judgment (*ECF No. 12*) be granted. It is further recommended that the "final decision" of the Commissioner denying Snow's applications for DIB and SSI benefits be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

s/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Dated: January 15, 2013